LEMMON, Judge.
Both sets of defendants have appealed from a judgment holding them liable in solido for the damages sustained by two passengers on a public service bus in a two-vehicle collision. The two suits were consolidated for trial in the district court and for argument in this court, where all *854 parties have stipulated that liability is the only issue to be decided.
The accident, which involved a public service bus and a tractor-trailer unit, occurred on the elevated Claiborne Avenue overpass in the City of New Orleans. The drivers of the vehicles gave conflicting versions of the occurrence.
The bus driver testified that he entered the overpass by means of an on-ramp from Poydras Street, at which point Claiborne Avenue was elevated and consisted of three lanes of traffic; that the on-ramp from Poydras Street merged into the left traffic lane of Claiborne, from which point, after determining that there was no traffic in the middle or the right lane, he gradually crossed both lanes and entered the right lane of traffic; that after he traveled about 100 yards in the right lane of traffic at a speed of 15 to 25 miles per hour (in a 30 mile per hour zone) he approached another on-ramp to his right onto the elevated overpass; [1] that as he approached the on-ramp to his right, he saw no traffic entering Claiborne from the on-ramp and proceeded past it; and that when about three-fourths of his bus had passed the on-ramp he heard a horn to the right and behind him and then felt the impact of a collision on his right rear.
On the other hand, the truck driver testified that he first saw the bus when “I was just entering the right-hand lane (of Claiborne Avenue), and I noticed the bus in the center lane”, observing in his side rearview mirror that the bus was about 20 feet from the left side of his tractor; [2] that he anticipated the bus would remain in the center lane and continued out into the clear right lane, without stopping for the yield sign; that the bus suddenly and without warning began to change from the middle lane to the right lane; and that with about half of his tractor into the right lane he braked immediately and went upon the rim of the side railing of the overpass, but the right end of the. bus collided with the left front of the stopped tractor.
The damage to the bus was at the extreme rear on the right side, behind the right rear tire, and the damage to the tractor was on the extreme left front corner.
One plaintiff completely corroborated the version presented by the bus driver, and the testimony of the other plaintiff, who had not seen the accident occur, is of little value in the determination of liability except for his statement that the bus had been in the right lane “for a while” prior to impact. Another passenger, who was not a party to either suit, also testified substantially in accordance with the version related by the bus driver. Significantly, both the one plaintiff and the independent witness testified positively that the truck continued moving until the collision, the latter stating that she remarked to another passenger that the truck was not going to yield to them.
The trial court held that both drivers were liable for the accident. In reasons for judgment the court apparently imposed a duty on the driver not to move into or remain in the right lane as the bus approached the on-ramp, stating that “a prudent driver would have considered the fact that other vehicles would have been coming on to the overpass from the up-ramp” and that the bus driver “had ample time to move to his left”. The court concluded that each driver could have seen the other vehicle and could have avoided the accident.
Imposition of this duty on the right of way motorist was an error of law.[3] If *855 the bus was in the right lane for a substantial period of time prior to reaching the on-ramp (as assumed in that part of the discussion in reasons for judgment), then the bus driver (while he perhaps could have seen the truck if they both approached that point at the same time, by looking down the on-ramp) had no duty under the circumstances to anticipate then that the truck would violate the yield sign.[4] Furthermore, the bus driver (still assuming the correctness of his version as to being in the right lane) had no duty then to take evasive action until the truck gave some indication that it would violate his right of way.[5] And since (under the bus driver’s version) the front of the truck did not come out of the on-ramp until the bus had virtually completed passing this area, acceptance of this version compels the conclusion that the truck driver was solely negligent.
On the other hand, under the version presented by the truck driver, the bus driver was solely negligent in changing lanes improperly when it was unsafe to do so because the truck was already entering the right lane.
The trial court apparently rejected the truck driver’s version on the facts and found that he was negligent in failing to yield the right of way. The record overwhelmingly supports such a finding of fact.
As to the bus driver, the only basis for imposition of liability would be a factual finding that the bus driver moved from the center lane into the right lane in front of the truck just as the truck was entering the overpass. Yet the reasons for judgment do not even hint at such a finding of fact. Rather, the reasons for judgment assume that the bus driver was in the right lane and then improperly place liability on the bus driver because he could have moved into the middle lane, although there was no duty on the bus driver to refrain from continuing in the right lane because the bus was approaching an on-ramp.
Furthermore, the bus driver’s version was supported by both plaintiffs and the other passenger who witnessed the accident, and there was no reason for these witnesses to favor either party. Indeed, the trial court had to accept the credibility of the plaintiffs in rendering relatively sizeable award for injuries sustained in a minor collision.
We therefore conclude that the truck driver was solely negligent in this case.
Accordingly, we reverse the judgment of the trial court insofar as the judgment was rendered against New Orleans Public Service, Inc., and it is now ordered that plaintiffs’ suit be dismissed as to that defendant. In all other respects the judgment is affirmed. All costs in both courts are assessed against Summer High Distributing Company and Empire Fire and Marine Insurance Company.

REVERSED IN PART, AFFIRMED IN PART.

GULOTTA, J., concurs and assigns reasons.

. The Claiborne Avenue overpass is elevated, but this on-ramp (which is an exit from the interstate highway that crosses the Claiborne overpass) comes into Claiborne from above at a very slight angle after making several curves between the interstate highway and Claiborne.

. The truck driver admitted that he did not see the bus by looking to the left or to the rear, but first saw the bus in the rearview mirror, when he was at the edge of the Claiborne Avenue roadway, indicating that his truck was virtually into the right lane and still moving when he first saw the bus approaching from behind him.

.This error of law apparently stemmed from allowing into evidence an illustration from a driver’s license manual, advising license applicants that it is courteous to move into the left lane of an interstate highway (if it is clear) *855 when traffic is attempting to merge into the right lane. No law obliges a motorist in the right lane to do so, and indeed the yield sign obliges the merging motorist to yield the right of way to traffic in the right lane.
Furthermore, the legal test for liability on a right of way motorist is not whether he could have seen the other vehicle and avoided the accident, but whether the other vehicle’s actions were such as to alert him that he could no longer rely on his right of way and whether he had sufficient time thereafter to avoid the accident.

. There is no indication in the record (except the truck driver’s testimony) or in the numerous photographs of the on-ramp and the general area that would suggest that the front of the truck was visible to the bus driver if he approached the area of the on-ramp ahead of the truck, which would have been above and behind him.

. Certainly, in the exercise of the highest degree of care required of a common carrier, the bus driver could not have disregarded a vehicle coming out of the on-ramp ahead of him into his path, in violation of the yield sign, but acceptance of such facts (as related by the truck driver) requires rejection of all other witnesses.